IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 06-cv-00607-WDM-CBS

CANDY WILSON,

      Plaintiff,

v.

THE ALAMOSA SCHOOL DISTRICT, a political subdivision,

      Defendant.

---

## ORDER ON DAMAGES AND ON MOTION FOR
## JUDGMENT AS A MATTER OF LAW

---

Miller, J.

      This matter is before me on the Defendant's Renewed Motion for Judgment as a Matter of Law, or In the Alternative, Motion for a New Trial (doc no 107) and Motion for Remittitur (doc no 106). Also pending is the question of whether Plaintiff's equitable relief, including front and back pay, otherwise stipulated by the parties (doc no 116), should be reduced or barred by a failure to mitigate. An evidentiary hearing on the mitigation question was held on October 9, 2008. For the reasons that follow, Defendant's motions will be denied. In addition, I conclude that Plaintiff's right to equitable relief is not barred by any failure to mitigate; accordingly, judgment shall enter in accordance with the parties' stipulation.

<u>Background</u>

      Plaintiff has worked for the Defendant Alamosa School District RE–11J (the "District") since 1984. She has worked as a teacher, coach, and Associate Principal

("AP").  In early 2004, Plaintiff, then an AP, sought a position as a principal at another school.  Shortly after accepting it, however, Plaintiff contacted Henry Herrera ("Herrera"), the Superintendent of the District, and informed him she was experiencing anxiety attacks and other difficulties, including heart palpitations and insomnia, and did not want to start a new job while she was feeling this way.  She told him she wanted to stay in her current position, since she knew the work and could manage it.  Plaintiff also informed Herrera she was taking medication to treat the anxiety.  Herrera tried to persuade Plaintiff to take the job but she ultimately decided against it.

Around April, 2004, Herrera attended a School Board meeting to discuss Plaintiff. He shared his perceptions of Plaintiff's condition and informed the School Board that he did not want Plaintiff to continue as an AP or to even finish the school year.  In an April 6, 2004 meeting with Plaintiff, Herrera stated that he was concerned Plaintiff would have a nervous breakdown and asked her repeatedly to resign from the District or to take a medical leave of absence.  According to Plaintiff, Herrera told her that he would blackball her to other school districts if she applied.  Herrara testified at trial that he told her he would not give her a letter of recommendation.  Plaintiff was tenured and could not be terminated without cause, generally limited to incompetence, insubordination, or immoral activities.

In a letter to Plaintiff dated April 7, 2004, Herrera denied Plaintiff's request to remain in her AP position, citing three previous occasions that she requested and obtained reassignment and then turned them down.  The letter goes on to say, "From this brief history, your actions have seriously called into question your ability to make decisions, stick to them, and carry them out.  Also, I am seriously concerned about your

2

health, and, in particular, the anxiety attacks you shared that you have been experiencing." Herrera further stated, "I am no longer confident that you have the capacity to function as a building level administrator." The letter informs Plaintiff that she would be reassigned for the remainder of the year as administrative support and in the following school year would be reassigned as a classroom teacher.

On April 13, 2004, Herrera had another meeting with Plaintiff. According to Plaintiff, Herrera again stated concerns about Plaintiff's health, mental health and his belief that she was on the verge of having a nervous breakdown, and again asked her to resign. Herrera directed Plaintiff not to enter any school building, not to have contact during the workday with any staff, not to attend school related activities, and to return office items and materials, including work on a grant that Plaintiff had traditionally obtained for the District, and that she would be arrested if she attempted to enter school grounds. Plaintiff was instructed she would work from home for the remainder of the school year. Plaintiff also presented evidence that Herrera made statements to faculty and staff that Plaintiff had been removed because her health was "too fragile" for her to be able to finish the school year.

Plaintiff completed projects from home for the rest of the year and began teaching at a middle school in the District the following school year, where she has continued to teach up to the present. On July 10, 2008, a jury entered a verdict in favor of Plaintiff after a four day trial.

<u>Standard of Review</u>

Under Fed. R. Civ. P. 50, a judgment as a matter of law notwithstanding the jury's verdict is appropriate "only if the evidence points but one way and is susceptible

to no reasonable inferences supporting the party opposing the motion." *Questar Pipeline Co. v. Grynberg*, 201 F.3d 1277, 1284 (10th Cir. 2000).  The evidence and inferences must be construed in the light most favorable to the non-moving party.  *Doan v. Seagate Technology,* 82 F.3d 974, 976 (10th Cir. 1996).

Fed. R. Civ. P. 59 permits a court to grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court," but only where the claimed error substantially and adversely affects the rights of a party.  *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998).

<u>Discussion</u>

1.    <u>Motion for Judgment as a Matter of Law or for New Trial</u>

To prevail on an ADA claim, a plaintiff must establish: (1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) her employer discriminated against her because of her disability.  *Butler v. City of Prairie Village*, 172 F.3d 736, 748 (10th Cir. 1999).  "Disability" includes being "regarded as" having an impairment that substantially limits a major life activity.  42 U.S.C. § 12102(2); *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999) (the "regarded as" standard is met when an employer "mistakenly believes that an actual, nonlimiting impairment substantially limits on or more major life activities").  Although "working" has generally been recognized as a major life activity, in order to prevail on a "regarded as" claim, a plaintiff must do more than show that the defendant perceived the plaintiff as unable to perform a single job.  *E.E.O.C. v. Heartway Corp.*, 466 F.3d 1156, 1162 (10th Cir. 2006).  Rather, the plaintiff must prove by a preponderance of the evidence that the

4

employer perceived the employee's condition as "significantly restrict[ing]" her "ability to perform either a class of jobs or a broad range of jobs" as compared to similarly trained persons.[1] *Id.* This standard has a strong subjective component, as it requires showing the state of mind of the decision-maker. *Id.* at 1163.

The District argues that there was not a legally sufficient evidentiary basis for the jury to find that the District regarded Plaintiff as being substantially limited in her ability to work.  Specifically, the District notes that to rely on the major life activity of "working" as the basis of the ADA claim, the plaintiff must show that the employer considered the employee limited from performing a class or broad range of jobs in various classes. The District argues that the appropriate class of job at issue here is "educator jobs" and that the evidence showed she could and was regarded as being able to work other educator jobs, specifically as a teacher.  The District cites several cases to support the proposition that "school administrator" is not a broad class of jobs.  *Milholland v. Sumner County Bd. Of Educ.*, No. 3:07-cv-0216, 2008 WL 974726 (M.D. Tenn., April 8, 2008), *aff'd* --- F.3d ----, NO. 08-5568, 2009 WL 1884376 (6th Cir., Jul 02, 2009);

---

[1] What constitutes a "class of jobs" is an objective inquiry, and, according to guidance from the E.E.O.C., includes categories such as "heavy labor jobs," "jobs that involve manual labor," "semi-skilled jobs," and "jobs requiring the use of a computer." *Heartway Corp.*, 466 F.3d at 1163 n. 6 (citing E.E.O.C. Compliance manual).  A "class of jobs" is defined as "[t]he job from which the individual has been disqualified because of an impairment, and the number of and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment."  29 C.F.R. § 1630.2(j)(3)(ii)(B).  A broad range of jobs in various classes is defined as "[t]he job from which the individual has been disqualified because of an impairment, and the number of and types of jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment."  29 C.F.R. § 1630.2(j)(3)(ii)(C).

*Temple v. Bd. of Educ. Of City of N.Y.*, 322 F. Supp. 2d 277, 281 (E.D.N.Y. 2004).

In response, Plaintiff argues that even if the relevant class of jobs includes both administrative and teaching positions, there was sufficient evidence for the jury to find that Herrera regarded Plaintiff as being substantially limited in her ability to do all educational jobs.  I agree.  Construing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences therefrom, there is ample evidence that Herrera regarded Plaintiff as being substantially limited in her ability to work as an educator.  The evidence shows that he perceived her as being unstable, medicated, "fragile," and unable to make decisions.  Evidence that he strongly encouraged her to resign from the District and that he told her he would seek to prevent her from getting administrator positions in other school districts also supports the inference that he believed her incapable of performing any educational job.  Herrera's other conduct, including barring Plaintiff from the school and stating his belief that she was at risk of an imminent nervous breakdown, also indicates that he perceived her as suffering from a severe and lasting impairment that prevented her from doing any educational job.  The evidence in the cases cited by Defendants contain much weaker evidence of the employer's belief in the plaintiff's limitations.

The fact that Plaintiff remained as a teacher in the District is not dispositive.  Plaintiff was tenured and therefore could not simply be dismissed without cause and corresponding termination procedures.  Accordingly, construing the evidence in the light most favorable to the Plaintiff, a reasonable jury could have find that Herrera regarded Plaintiff as being substantially limited in her ability to work as an educator despite her continued work as a teacher for the District.

Alternatively, the evidence also supports a conclusion that Herrera regarded Plaintiff as being unable to perform jobs requiring administrative decision-making or management, not simply the job of a "school administrator."  Herrera's letter specifically stated, "your actions have seriously called into question your ability to make decisions, stick to them, and carry them out," which implies that he viewed her as being unable to perform any job requiring the same managerial or policy decision-making as Plaintiff's job as a principal or AP.  This undoubtedly covers "a broad range of jobs in various classes" or the "class" of managerial/administrative jobs.  *See, e.g., Jones v. OfficeMax, Inc.*, 38 F. Supp. 2d 957 (D. Utah, 1999) (noting that "managerial and administrative occupations" is a recognized class or category of jobs); *Burris v. Safeway, Inc.*, No. CV-04-0477-PCT-PGR, 2006 WL 2731113 (D. Ariz., Sep. 25, 2006) ("there is some support in the law for the proposition that a substantial limitation in the ability to perform a class of supervisory jobs suffices to establish a perceived disability based upon the inability to work," citing cases).  The EEOC's Compliance Manual Section 902, Definition of the Term "Disability" (1995) provides an example that is similar on its facts:

> Example 3 – CP, a bank teller, has a mild form of clinically diagnosed depression.  The depression does not substantially limit any of CP's major life activities.  R, CP's employer, learns of CP's clinically diagnosed depression and assumes that the depression will prevent CP from working well with customers and other members of the public.  There is no factual basis to R's assumption.  Nevertheless, R reassigns CP to a clerical position in a back office.  In this case, the exclusionary criterion -- the requirement that employees be able to work well with members of the public -- does not pertain to a unique aspect of the job or work site.  Rather, since a wide variety of jobs involves working with the public, the exclusionary criterion applies to a broad range of jobs.  By disqualifying CP from the teller position on the basis of a criterion that applies to a broad range of jobs in

> various classes, R has demonstrated that it finds CP to be
> unsuitable for work in a broad range of jobs.  Accordingly, R
> regards CP as substantially limited in the ability to work.

Section 902.8(f); *see also Moorer v. Baptist Memorial Health Care Sys.*, 398 F.3d 469,

484 (6th Cir. 2005) ("The fact that [employer] believed that [plaintiff's] alcoholism made

him unable to perform his hospital administrator job, which required a broad range of

managerial skills, permits the reasonable inference that [employer] believed that

[plaintiff's] alcoholism rendered him incapable of performing a substantial number of

managerial jobs.").  Because the broad class of managerial/administrative jobs does not

include teaching, the fact that Plaintiff continued working is not a factor in determining

whether Herrera regarded her as disabled.  *See Justice v. Crown Cork and Seal Co.,*

*Inc.,* 527 F.3d 1080, 1088-89 (10th Cir. 2008) (fact that plaintiff was offered janitorial

position was irrelevant where plaintiff demonstrated that employer regarded him as

unable to perform the class of jobs of "electrical work.").

The District also argues that there was insufficient evidence for the jury to

conclude that the District regarded Plaintiff as having an impairment that was

permanent or long-term.  The District points to evidence that indicates Herrera thought

Plaintiff needed six weeks off to recuperate.  However, again giving the Plaintiff the

benefit of all reasonable inferences, the fact that Herrera removed Plaintiff from her job

permanently could support the jury's verdict.  Similarly, Herrera's strong pressure on

Plaintiff to resign from all jobs (permanently) in the District supports the jury's conclusion

that he regarded her as having a long-term impairment.

Finally, the District argues that Jury Instruction No. 12 was in error.  That

instruction stated:  "A mental impairment under the ADA includes major depressive and

anxiety disorders."  The District argues that this could have misled the jury into thinking that simple anxiety could be a disability. I discern no error.  Numerous legal authorities establish that anxiety disorders may be considered a mental impairment for the purposes of an ADA claim.  *See, e.g., Battle v. United Parcel Service, Inc.*, 438 F.3d 856, 861-62 (8th Cir. 2006).  Even if this portion of the instruction was ambiguous, the jury still had to find that defendant regarded the impairment as substantially limiting a major life activity, which precludes a determination that simple anxiety is a disability.  I conclude the jury was properly instructed.

2.   Failure to Mitigate

Defendant has asserted an affirmative defense of failure to mitigate.  If I rule against Defendant's claim, the parties have stipulated to the amount of front and back pay and other relief.  See Stipulation Regarding Economic Damages (doc no 116).

A claimant who has suffered a discriminatory employment action has a duty to minimize damages.  *See Acrey v. American Sheep Indus. Ass'n*, 981 F.2d 1569, 1576 (10th Cir. 1992).  "A claimant need only make a reasonable and good faith effort, and is not held to the highest standards of diligence."  *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1158 (10th Cir.1990).  The burden of showing that a plaintiff did not act reasonably to mitigate damages rests on the employer.  *Id.*  This involves showing: "(1) that the damage suffered by plaintiff could have been avoided, *i.e.* that there were suitable positions available which plaintiff could have discovered and for which [she] was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position."  *EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980) (citation omitted).

9

Defendant argues that Plaintiff did not seek other jobs that would have led to a position equivalent to the Associate Principal job she previously held.  In addition, the District argues that Plaintiff applied for other administrative positions in 2004 only, and then abandoned her job search.  At the hearing on damages, Herrera testified that he was aware that there were openings for administrators in other school districts during the relevant time, but offered no specific information about the jobs and whether (or when) Plaintiff would have earned more as a new employee in another district than as a teacher at the District.  The evidence demonstrated that Plaintiff was earning the highest level of pay on the teacher pay schedule in the District and there was considerable question about whether Plaintiff could have transferred all of her years of seniority had she sought a position in another district.  In addition, had Plaintiff transferred to another district, she would have lost her tenure and other accrued seniority benefits; the duty to mitigate does not require such sacrifice.  *See, e.g., Poindexter v. Atchison, Topeka and Santa Fe Ry. Co.,* CIV. A. No. 94-2341-GTV, 1996 WL 507303 *(*D. Kan.,Aug. 5, 1996) (if plaintiff had sought other employment, result would have been termination of her employment relationship with defendant and loss of seniority and benefits); *Carrero v. New York City Housing Auth.*, 890 F.2d 569 (2d Cir. 1989) ("To require a plaintiff in Title VII litigation to risk whatever job security she retains after experiencing . . . discrimination in order to preserve a claim for backpay puts her in the same spot as the sailor caught between the devil and the deep.*").*

Plaintiff admits that she applied for four administrative jobs in 2004 and thereafter did not pursue alternate employment as an administrator.  She contends that she was limited in where she could look for employment because of her husband's position as a

10

Principal in the Monte Vista School District No. C-8 and her own significant seniority, benefits, and tenured status with the District.  Certain jobs, such as those in the Denver School District, would have resulted in reduction of retirement benefits, as well as the need to establish a second residence.

Under the circumstances, I conclude that Defendant has failed to meet its burden of proof.  Plaintiff acted reasonably in mitigating her damages by retaining her relatively high paying teaching job and its attendant benefits, particularly her significant investment in her retirement plan.  Defendant has not demonstrated that there were higher paying administrative jobs (or potentially higher paying jobs) within a reasonable distance of Plaintiff's current residence that Plaintiff could have, but did not, pursue. The mere fact that there were other jobs in the state does not show that Plaintiff would have earned more in one of those positions.  Given that Plaintiff maintained a reasonable salary as a teacher, apparently the highest in the District, and in light of evidence that the District's pay scale was higher than those of the nearby school districts and Plaintiff might have lost significant other accrued benefits in another district, I conclude that Defendant has failed to prove that Plaintiff did not reasonably mitigate her damages.

3.    Motion for Remittitur

At trial, Plaintiff was awarded compensatory damages for emotional distress in the amount of $240,000.  The District argues that pursuant to the statutory damages caps set forth in the ADA that this amount must be reduced to $200,000; Plaintiff does not dispute this.  42 U.S.C. § 1981a(b)(3)(C).  The District further argues that the evidence does not support this award and that her award should be reduced to $40,000.

There does not appear to be any dispute regarding whether Plaintiff's other damages, such as front pay, are subject to the $200,000 cap. *Pollard v. E.I. duPont deNemours & Co.*, 532 U.S. 843 (2001) (holding that front-pay is not an element of compensatory damages within the meaning of the Civil Rights Act of 1991, and, therefore, not subject to the Act's statutory cap).

Plaintiff argues in response that there is significant evidence supporting the jury's emotional distress damages award.  She argues the harm inflicted was severe, including the humiliation of being barred from school grounds and Herrera's alleged threat to prevent her from getting an administrative job in another district.  She points to evidence that she did indeed suffer emotional distress, including evidence that she began taking anti-depressants and her husband's testimony about her feelings of betrayal and depression.  She also notes evidence from others about Plaintiff's physical manifestations of depression and emotional distress.  Plaintiff cites case law showing that the award is comparable to others in the circuit.

Although I may well have awarded less, this was for the jury to decide.  Its award is not "conscience shocking" and appears to be supported by competent evidence.

Accordingly, it is ordered:

1.    Defendant's Renewed Motion for Judgment as a Matter of Law, or In the Alternative, Motion for a New Trial (doc no 107) is denied.

2.    Defendant's Motion for Remittitur (doc no 106) is granted in part and denied in part.  The jury's award of compensatory damages for emotional distress in the amount of $240,000 shall be reduced to $200,000.  Defendant's request for an further reductions of the jury's award is denied.

3.     Judgment shall enter in favor of Plaintiff pursuant to the jury's verdict as modified and the parties' stipulation as follows:

     a.     Defendant shall pay Plaintiff $200,000.00 in compensatory damages.

     b.     Plaintiff shall be reinstated as Associate Principal at Alamosa High School beginning July 1, 2009 at Step 6 on the pay scale.

     c.     Defendant shall pay Plaintiff $74,100.00 in back pay for the period from April 6, 2004 to September 30, 2008.

     d.     Defendant shall pay Plaintiff $12,636.00 in front pay for the period from October 1, 2008 to June 30, 2009.

4.     Plaintiff is entitled to her costs pursuant to law.

DATED at Denver, Colorado, on July 15, 2009.

BY THE COURT:


s/ Walker D. Miller
United States Senior District Judge